IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CHARLES F. STEARNS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-1260-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Max Rae
P. O. Box 7790
Salem, Oregon  97303

       Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

David M. Blume
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

     Attorneys for Defendant

KING, Judge:

Plaintiff Charles Stearns brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous

Page 2 - OPINION AND ORDER

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and

416.920(e).

        If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience.  The burden shifts to

the Commissioner to show what gainful work activities are within the claimant's capabilities.

Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is not able to

perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

                              **STANDARD OF REVIEW**

        The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

                              **THE ALJ'S DECISION**

        The ALJ found that Stearns had nonsevere impairments of chronic pain involving his

back, left arm, and right knee and severe impairments of chronic pain syndrome, an adjustment

disorder with depressed mood, and a personality disorder, not otherwise specified.  The ALJ also

found that these impairments, either singly or in combination, were not severe enough to meet or

medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of

the Social Security Regulations.  After reviewing all the evidence, the ALJ found that Stearns had the residual functional capacity to perform modified light work, limited to work which does not require frequent or constant changes in the environment or frequent or constant interaction with coworkers or the general public.  Based on vocational expert testimony, the ALJ found that Stearns had the residual functional capacity to work as a semiconductor assembly worker, packing line worker, wire worker, and small products assembler.  The ALJ concluded that Stearns was not disabled under the Act.

## FACTS

Stearns, who was 52 years old at the time of the ALJ's opinion, alleges that he has been disabled since May 7, 2002 due to depression and chronic pain in his back, arm, and knee.  He has a high school education and experience as a tree farmer and carpet installer.

Stearns injured his back in 1980 and ruptured his ACL in his right leg in May 2002 when he fell off a loading dock.  He complains of extreme pain in his right foot, lower right leg, left foot, and upper and lower back; numbness in his left hand, arm, foot, and toes; popping in all of his joints; and swelling in his lower legs to three times the normal size.  Emotionally, Stearns suffers from depression, anxiety, and panic attacks.  Because of the anxiety, Stearns has never gotten a driver's license.  He takes methadone, vicodin, and an antidepressant but only gets three or four hours of sleep a night due to the pain.

Prior to his knee injury, Stearns used to rock hunt, camp, fish, and hunt.  As of August 2003, Stearns claimed he very seldom left his home due to the pain and panic attacks.  Any movement caused him so much pain that he was unable to move at all for a few days.  Stearns was unable to help with the housework or shopping and had to rest after 20 or 30 minutes of

activity. By June 2004, his symptoms had worsened so that he needed help getting in and out of

the shower and to wash and comb his hair. By then, Stearns had to rest after 10 to 15 minutes of

activity. As of the last hearing in December 2007, Stearns usually had one 45 minute active

period a day and rested, read, and watched TV for the remainder of the day. His wife

corroborates Stearns's statements and adds that he cannot stand for longer than five minutes,

cannot lift a gallon of milk, and his activity level has decreased to where Stearns "more or less

sits there." Tr. 500-01.

Stearns's wife has received Social Security disability benefits for many years due to a

problem with her leg and hip. Stearns is no longer able to help her around the house. By the

time of the third hearing, Stearns and his wife had moved into a friend's basement, a situation

which helped not only financially but required less household maintenance and no work on the

exterior of the home.

## DISCUSSION

I.   <u>Physicians' Opinions</u>

Stearns argues that the ALJ improperly rejected some of the physicians' opinions.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician. More weight is given

to the opinion of a treating physician because the person has a greater opportunity to know and

observe the patient as an individual. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007). If a

treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons. <u>Id.</u> (treating physician); <u>Widmark v. Barnhart</u>,

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons

supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at

1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial

evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066

n.2.

> A.    Dr. Blake

Stearns contends that the ALJ erred by adopting Dr. Blake's assessment shown by

objective physical findings and ignoring Dr. Blake's assessment of how Stearns's mental

impairments cause additional limitations on his physical functioning.  Stearns notes that the ALJ

did find that Stearns suffers from chronic pain syndrome, and thus should have given credence to

the impact of the mental impairments.

Dr. Blake examined Stearns on July 5, 2006 and diagnosed chronic pain syndrome with

no objective evidence of pathology to explain the long-term complaints of back pain, chronic

right ACL insufficiency as well as right knee meniscal tears sustained in 2002, depression,

anxiety, and hypertension.  Dr. Blake opined:

> Based on the claimant's subjective complaints, he would be able to
> perform sedentary work for eight hours per day if he were given the opportunity to
> frequently change positions to relieve knee and back pain.  Based on his
> demonstrated level of functioning, he would be able to stand and move about for
> at least two hours and sit for at least two hours in an eight-hour workday.  He
> could lift and/or carry less than 10 pounds both occasionally and frequently.  He
> could occasionally perform climbing, balancing, stooping, and bending and could
> never perform crouching, squatting, kneeling, or crawling.  Based on today's total
> evaluation, there are no objective findings which would preclude the claimant
> from being able to work in at least the light category according to the Department
> of Labor standards for eight hours per day.  He could stand and move about for at
> least two hours in an eight-hour workday and could sit for at least six hours in an
> eight-hour workday with normal breaks.  He should be able to lift and/or carry at

least 25 pounds on an occasional basis and at least 10 pounds on a frequent basis.
He could occasionally perform climbing, balancing, stooping, bending, crouching,
squatting, kneeling, and crawling.

Tr. 320.

The ALJ noted that Dr. Blake's report focuses significantly on the disparity between

Stearns's subjective complaints versus actual medical signs and findings, which caused the ALJ to

adopt the portion of Dr. Blake's opinion which is based on objective findings.

The ALJ did not take into account the chronic pain syndrome diagnosed by Dr. Blake,

which provides support for the portion of his opinion based on Stearns's subjective complaints

and demonstrated level of functioning.  Dr. Kruger, psychologist, examined Stearns on July 15,

2006 and diagnosed adjustment disorder with depressed mood, chronic, and personality disorder

not otherwise specified, passive-dependent features.  Dr. Kruger administered the MMPI-2 and

noted:

Individuals with MMPI-2 profiles similar to that of Mr. Stearns typically present
themselves as physically ill, with complaints of discomfort and pain.  They
generally are concerned about their health and bodily functions and may have a
tendency to overreact to minor physical dysfunction.  These individuals often are
noted as being anxious, tense, withdrawn, and reclusive, and tend to be more
comfortable by themselves than in groups.

Tr. 331.

The ALJ found that Stearns had a severe impairment of chronic pain syndrome, but the

ALJ did not further address the issue when he determined Stearns' residual functional capacity.

Although Stearns was taking antidepressants, they were prescribed by his family doctor.  Due to

lack of insurance at times, Stearns delayed some medical testing, had never been treated by a

psychiatrist or psychologist, and was unable to get treatment at a pain management clinic.  The

Page 8 - OPINION AND ORDER

effect of his psychological problems on his physical ailments cannot be ignored because it has not

been fully addressed.  I conclude that the ALJ has not provided specific and legitimate reasons

supported by substantial evidence in the record to reject the portion of Dr. Blake's opinion which

explained Stearns's functionality based on his demonstrated level of functioning.  My reasoning is

further supported by the next analysis concerning Dr. Surbaugh.

       B.    <u>Dr. Surbaugh</u>

Stearns claims that the ALJ erred by giving no weight to the opinion of his treating

physician, Dr. Surbaugh.

In a form provided by Stearns's counsel on May 30, 2006, Dr. Surbaugh noted that in an

eight-hour work day, Stearns would have to rest seven hours to relieve pain, could sit four hours

cumulatively, could walk for less than one hour cumulatively, and could rarely or never lift over

five pounds

The ALJ gave little weight to the form completed by Dr. Surbaugh because it was not

consistent with his own treatment notes or the overall medical record, including the exam by

Dr. Blake.  The ALJ also noted that Dr. Surbaugh only examined Stearns once prior to completing

the form and found only minimal adverse symptomology and a complete lack of any objective

medical signs or clinical findings.

Dr. Surbaugh was in the same clinic as Stearns's earlier treating physician, Dr. Grady, who

had seen Stearns since at least December 2003.  Thus, Dr. Surbaugh would have access to all of

Dr. Grady's treatment notes when Dr. Surbaugh completed the form in May 2006, even though he

had personally seen Stearns only once.

As I noted above, Dr. Blake diagnosed chronic pain syndrome and provided an opinion on Stearns's functional capacity which was much more limited than would be supported by objective findings.  Thus, Dr. Surbaugh's opinion is not inconsistent with Dr. Blake's opinion.  On August 22, 2006, Dr. Surbaugh sent additional information to Stearns's counsel, stating:  "With significant symptoms of depression and the negative spiraling cycle of decreasing activity, any physical symptoms become magnified, and even otherwise tolerable or manageable problems become either insurmountable or less magnified."  Tr. 339.  The ALJ again ignored the psychological aspects of Stearns's illness.

I conclude that the ALJ has not provided specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Surbaugh's opinion.

II.    Stearns' Subjective Symptom Testimony

Stearns argues that the ALJ failed to properly evaluate Stearns' credibility.  Stearns claims that the assessments of the doctors and third-party evidence corroborate Stearns' statements about his symptoms and limitations.  He contends that the ALJ erred in rejecting his complaints as being of "unknown etiology" when the ALJ found that he had a severe impairment of chronic pain syndrome, evidenced by unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the

severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

The ALJ found that Stearns's testimony was not credible. He first noted that Stearns's friend who testified at the hearing, Dan Coulson, stated that Stearns was in good shape through 2002 but Stearns claimed he was disabled by his 1980 back injury. Coulson actually stated that Stearns had no extensive problems prior to 2002, although he was off work for a while, but that he stayed at home "like Mr. Mom" during the time and could have worked, if Coulson's "memory served [him] correctly." Tr. 456. I agree that there is some discrepancy between the circumstances as explained by the two men, but I do note that Stearns never claimed to have been disabled from 1980 up through his knee injury in 2002. He was off work for nine years and then worked from some time in 1989 until the knee injury in 2002.

The ALJ was concerned that Stearns said that he worked until May 2002 but he has no reportable earnings after calendar year 2000. Stearns, however, was self-employed laying carpet and apparently did not report the income. That does not mean that he did not work. When he was examined the day after his knee injury, Stearns reported that he fell off a loading dock while working. The ALJ's reason is not persuasive.

The ALJ reasoned that Stearns's subjective symptom testimony was not credible based on the objectively observed examination signs from Drs. Grady, Blake, and Kruger. As I explained

Page 11 - OPINION AND ORDER

above, I am not persuaded by this reason because it ignores that chronic pain syndrome diagnosis by Dr. Blake and Dr. Kruger's MMPI-2 analysis.

The ALJ also noted that Stearns testified that he never got a driver's license and had never driven because of his anxiety, but Coulson testified that Stearns drove when he was younger, without a license. Coulson actually explained that Stearns would drive when they went hunting as teenagers, more than 30 years ago. The driving took place on back roads and private property. This discrepancy is too minor to support a finding of a lack of credibility.

I am bothered by the fact that the ALJ did not examine Stearns's daily activities as part of the credibility analysis. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). There is no evidence that Stearns does *anything* other than stay home, with extremely limited activity levels there, and occasionally go to a doctor's appointment. This is an extreme change for a man who used to camp, hunt, and fish. Moreover, Stearns provided a great deal of assistance to his disabled wife with the housework, prior to 2002. He is now providing none. Stearns and his wife even moved from their home to the basement of their friend, Coulson, causing Stearns's wife to comment that the move took a lot of pressure off Stearns because they no longer have to keep the yard up.

It is not relevant in the disability analysis if Stearns's symptoms are caused solely by his physical impairments or if his mental impairments cause the physical problems to have more severe symptoms than usual. In summary, the ALJ erred by not giving specific, clear and convincing reasons for disbelieving Stearns.

Page 12 - OPINION AND ORDER

III.    Remedy

    The court has the discretion to remand the case for additional evidence and findings or to award benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

    The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  Id.  On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate."  Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

    I see no reason to remand this case for another hearing.  Stearns' application was already delayed over 14 months when the Appeals Council vacated the ALJ's first opinion and remanded for an additional hearing.  I conclude that this is the unusual case in which it is clear that Stearns

is not able to perform gainful employment since his alleged onset date of May 7, 2002.  There is no need to address the other arguments raised by Stearns.

## CONCLUSION

The decision of the Commissioner is reversed.  The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____11th_____ day of June, 2009.

   _/s/ Garr M. King_____
Garr M. King
United States District Judge